**DeLisa v. Clark**
*[Cite as 4 AOA 368]*

*Case No. 14414*
*Summit County, (9th)*
*Decided June 9, 1990*

*Robert B. Laybourne, Attorney at Law, 503 Society Bldg., Akron, OH 44308, for Plaintiffs.*

*William G. Chris, Attorney at Law, 706 TransOhio Bldg., 7 W. Bowery St., Akron, OH 44308, for Plaintiffs.*

*Melville Kaforey, Attorney at Law, 1024 Society Bldg., Akron, OH 44308, for Defendants.*

*Joseph O'Leary, Attorney at Law, 432 Turkeyfoot Lake Rd., W., Akron, OH 44319, for Defendants.*

QUILLIN, P. J.

Defendants-appellants appeal the trial court's judgment in favor of the plaintiffs-appellees for fraud in the sale of real property. We affirm.

The instant action involves a defective sewage system upon the property at 3420 South Main Street in Akron, Ohio. In January 1987, defendant-appellant, Karen Clark purchased the property from R. Hughes for $33,000. Prior to the sale, Hughes' real estate agent provided Clark and Clark's real estate agent, defendant-appellant, Elaine Lamberson, with a letter from Summit County Sanitarian, Gerald Crites.

The letter stated:

"An investigation of the property located at 3420 South Main Street, Coventry Township, Summit County, Ohio, showed the present septic tank needs to be replaced and the present leach well has standing water in it. Additionally, the home is unoccupied and has been for some time.

"Because of the extremely small lot, proximity of the lake, and the fact that part of the lot has been removed through construction of a boat slip all cause me to be *unable* to design or recommend a design to upgrade the present home sewage system to meet current Health Department Code requirements. It is my suspicion that the present home sewage system, even after the needed replacement of the present septic tank, will malfunction with the probability of 'bleeding' into the lake from the sheer banks of the property abutting the lake.

"We will permit the replacement of the present septic tank with the understanding that this action will not result in a home sewage system that meets current Health Department Code requirements.

"Whether the home sewage functions in a satisfactory manner can only be determined through use. If, the home sewage system does malfunction as I have suggested it might, remember that there is *no* room for a replacement home sewage system."

Both Clark and Lamberson signed the letter indicating that they understood the substance of the letter prior to the purchase.

Clark purchased the property and began major renovations upon the structure on the property. The renovations entailed razing a small summer cottage and constructing a larger new home. During the renovation, in late April or early May, plaintiffs-appellants, Anthony and Jill DeLisa, expressed interest in purchasing the property after the home was built.

A meeting was held on the property among the DeLisas, Clark, and Clark's real estate agent, Lamberson. During the negotiations, the DeLisas inquired about the sewage system on the property. Clark pointed to the approximate location of the underground water well and septic tank. Clark stated that the septic tank lid had been crushed by a cement truck when the previous owner put in a boat slip, however, the tank was replaced and everything was fine.

The DeLisas purchased the property in May 1987 for $134,900 and occupied the premises in the fall of 1987.

In late April or early May 1988, the DeLisas noticed that water was standing in the back yard and an odor was emanating from the ground. An inspection of the area by sewage system installer, Don Templeton, revealed that the sewage system leach well had overflowed. The overflow was running effluent down into and polluting the lake behind the DeLisas' home. Templeton contacted Crites and Crites determined that the concerns expressed in his previous letter had been realized.

Crites and Templeton were, however, able to construct a new sewage system by relocating the leach well to the front of the home and the water well to the rear. They also added another septic tank to the existing tank and installed a pump to pump the sewage water from the rear tank to the new leach well in the front.

The total cost of the new system was $8,141.26. The DeLisas also have an expense of $32.49 per month for a leased water purification system. Further, the location of the new leach well prevents the DeLisas from paving their driveway.

The DeLisas brought an action against Clark, Lamberson and defendant-appellant, Kruger Realty Company ("Kruger"), Lamberson's employer. At trial, appellants claimed that they relied upon a health department report by Robert Oberlin rendered subsequent to Crites' inspection and letter. This report stated that the home was vacant at the time of the inspection and the system was not at that time creating a nuisance. Also, the report stated that the septic tank had recently been replaced and the leach well was existing and contained a little water.

The jury found against Clark for $4500 in compensatory damages and $20,000 in punitive damages. The jury also found against Lamberson and Kruger in the amount of $4500 and $40,000 in punitive damages. Defendant-appellants now appeal.

*CLARK'S ASSIGNMENT OF ERROR I*

"That the court committed prejudicial error in not granting a Directed Verdict for Defendant, Karen Clark, at the close of plaintiff's case, and failed to rule on the Motion at the close of all the evidence as stated by the court."

Clark asserts that the trial court erred in failing to grant a directed verdict at the close of the DeLisas' case, because the DeLisas failed to present sufficient evidence that Clark caused and had knowledge of the defective sewage system. Clark also contends that the trial court erred in failing to consider Clark's motion for directed verdict at the close of all the evidence.

When a motion for directed verdict is made by a defendant at the conclusion of plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to present his evidence and defense, as long as the motion is renewed at the conclusion of all the evidence. *Helmick* v. *Republic-Franklin Ins. Co.* (1988), 39 Ohio St. 3d 71, paragraph one of the syllabus.

In the case *sub judice,* Clark failed to renew his motion for directed verdict. Therefore, Clark waived any exception to the trial court's ruling on the motion at the close of the DeLisas' case. Moreover, the trial court could not err in failing

to rule on Clark's motion for directed verdict at the close of the evidence, because there was no such motion before the court. Clark's first assignment of error is overruled.

*CLARK'S ASSIGNMENT OF ERROR III*

"That the verdict of the jury was substantially against and contrary to the weight of the evidence."

*LAMBERSON'S ASSIGNMENT OF ERROR III*

"That the judgment and the verdict against Kruger Realty, Inc. and Elaine Lamberson, are contrary to law of punitive damages, absent malice."

*KRUGER REALTY'S ASSIGNMENT OF ERROR II*

"(B) The verdict exceeds the damages presented by plaintiffs and recoverable in this action."

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, syllabus.

The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and there is no fraud on the part of the vendor. *Layman* v. *Binns* (1988), 35 Ohio St. 3d 176, syllabus.

An action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak. *Id.* at 178. A vendor of real property has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection. *Id.*

In the case *sub judice,* the DeLisas presented substantial evidence that the sewage system was defective at the time the DeLisas purchased the property. Also, the DeLisas presented evidence that the defects in the subterranean sewage system were not discoverable upon reasonable inspection. Further, there was substantial evidence that Clark had knowledge of the latent defect through Crites' letter; however, Clark failed to inform the DeLisas of the existence and content of the letter and latent defects.

We hold that the DeLisas presented sufficient evidence that Clark's acts or omissions

constituted fraud, therefore, such finding is not against the manifest weight of the evidence.

Clark and Kruger also contend that the compensatory damage amount was against the manifest weight of the evidence.

The DeLisas presented evidence that they paid $8,141.26 out-of-pocket to rebuild the sewage system. Also, the DeLisas presented evidence of damage due to the continuing expense of a water purifier, plus loss of use of the property. The compensatory damage award of $9000 is not against the manifest weight of the evidence.

Further, Clark and Lamberson assert that the granting of punitive damages was against the manifest weight of the evidence.

Punitive damages are available in actions involving ingredients of fraud, malice or insult. *Villella* v. *Waikem Motors, Inc.* (1989), 45 Ohio St. 3d 36, 37. Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, syllabus. Moreover, actual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross. *Villella, supra.*

The DeLisas presented evidence of fraud, in that Clark and Lamberson had knowledge of a latent defect and failed to disclose the defect upon the sale of the property to the DeLisas. This evidence shows a conscious disregard for the DeLisas' rights, and that Clark and Lamberson's acts had a great probability of causing substantial harm to the DeLisas. Therefore, we hold that the jury verdict awarding punitive damages was not against the manifest weight of the evidence. The assignments of error are overruled.

### CLARK'S ASSIGNMENT OF ERROR VI

"That the court committed prejudicial error in not granting judgment not withstanding the verdict or motion for new trial or to dismiss punitive damages as set forth in the motions of Defendant, Karen Clark."

Clark contends that the trial court erred in failing to grant Clark's motion for judgment notwithstanding the verdict on the issue of punitive damages.

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. *Neither the weight of the evidence nor the credibility of the witness is for the court's determination in ruling upon either of the above motions.*" (emphasis in original). *Osler* v. *Lorain* (1968), 28 Ohio St. 3d 345, 347; *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275; Civ. R. 50.

As stated previously, the DeLisas presented sufficient evidence to support the verdict for punitive damages against Clark. Therefore, the DeLisas certainly presented sufficient evidence from which reasonable minds could reach differing conclusions. The trial court did not err in failing to grant Clark's motion for judgment notwithstanding the verdict.

Clark also contends that the trial court erred in failing to grant a new trial on the punitive damages issue.

In determining whether the trial court properly denied Clark's motion for new trial, we must look to see if the trial court abused its discretion by not finding that a manifest injustice was done. *Rhode* v. *Farmer* (1970), 23 Ohio St. 2d 82, paragraph three of the syllabus; Civ. R. 59. We must view the evidence favorably to the trial court's action. *Jenkins* v. *Krieger* (1981), 67 Ohio St. 2d 314, 320. An abuse of discretion is more than an error of law or judgment, but implies that the attitude on the part of the trial court is unreasonable, arbitrary or unconscionable. *Ruwe* v. *Bd. of springfield Twp. Trustees* (1987), 29 Ohio St. 3d 59, 61.

In the case *sub judice*, there was substantial evidence presented to support the verdict. We hold that the trial court did not abuse its discretion in denying Clark's motion for new trial. Clark's sixth assignment of error is overruled.

### CLARK'S ASSIGNMENT OF ERROR II

"That the court committed prejudicial error in charging the jury on punitive damages over the objections of defendants."

### KRUGER REALTY'S ASSIGNMENT OF ERROR I

"The trial court erred to the prejudice of defendant in giving the jury instruction on punitive damages.

"A. There was not sufficient evidence for the issue of punitive damages to go to the jury.

"B. The language of the instruction was incorrect and misleading and did not comply with the test set forth in *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334.

"C. Taken as a whole, the instruction was misleading."

### LAMBERSON'S ASSIGNMENT OF ERROR II

"The trial court prejudicially erred against appellants, by excluding all reference to the rules and regulations of the Summit County Health Department, and their application hereto, including prejudicial instruction to the jury."

Lamberson asserts that the trial court erred in instructing the jury to exclude all reference to the Rules and Regulations of the Summit County Health Department. Clark and Kruger assert that the trial court erred in instructing the jury on punitive damages., as there was insufficient evidence to support an award of punitive damages. Further, Kruger contends that even if there was sufficient evidence to support an instruction on punitive damages the substance of the instruction was error.

Regardless of the appellants contentions, we need not consider the above assignments of error. Absent objection to the instructions on the record, appellants may not claim error on appeal. *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, paragraph one of the syllabus. The appellants failed to properly preserve exceptions to the jury charge on the record, therefore, the assignments of error are not well taken.

Even assuming, *arguendo*, that the appellants preserved their exceptions to the instructions, there was sufficient evidence to support the charge on punitive damages.

The DeLisas presented sufficient evidence that Lamberson's and Clark's acts and omissions were malicious and fraudulent, thereby supporting the punitive damages instruction. The DeLisas also presented evidence that Kruger had possession of the Crites letter, and refused to rectify the sewage system problem when the system malfunctioned. Kruger also received the benefit of the commission in the sale of the property to the DeLisas. In addition, Kruger at all times defended Lamberson's acts or omissions. There was sufficient evidence presented to justify the punitive damages instruction as to Kruger, because the DeLisas presented sufficient evidence that Kruger either authorized, ratified or participated in Lamberson's wrongful conduct. See *Saberton* v. *Greenwald* (1964), 146 Ohio St. 414, 428. The assignments of error are overruled.

### CLARK'S ASSIGNMENT OF ERROR IV AND V

"IV. Verdict of jury was based on passion and prejudice and not fair and reasonable.

"V. The court admonished both counsel for Kruger Realty and Elaine Lamberson and Karen Clark in the presence of jury thereby inflaming the passions of the jury thereby inflaming the passions of the jury against all defendants."

### LAMBERSON'S ASSIGNMENT OF ERROR I

"The trial court prejudicially erred against appellants Kruger Realty, Inc. and Elaine Lamberson, as hereinafter set forth:

"By berating and admonishing defense counsel both in and out of the presence of the jury, without cause or provocation, thereby committing prejudicial error, or plain error, contrary to law."

### KRUGER REALTY'S ASSIGNMENT OF ERROR II

"The verdict was the result of passion and prejudice.

"(A) The court exceeded its authority to control the course and demeanor of trial and inflamed the jury against defense counsel and defendants.

"(C) The punitive award clearly reflects the passion and prejudice of the jury."

Appellants contend that the trial judge's conduct during the course of the trial inflamed the jury against the defendants. However, the appellants failed to object to any of the alleged improper comments of the trial judge. Absent objection, the trial court did not have an opportunity to cure the alleged error, therefore, any alleged error is waived. *D'Andrea Ellison* (Feb. 1, 1989), Summit App. No. 13622, unreported. See *State* v. *Williams* (1977), 51 Ohio St. 2d 112.

Lamberson also contends that the actions of the trial court amounted to plain error regardless of the failure to object. In a civic action, a judgment will be reversed only under exceptional circumstances to prevent a manifest miscarriage of justice. *Cleveland Elec. Illum. Co.* v. *Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 275. A review of the record in the instant action reveals that the comments and actions of the trial judge were an attempt to control the proceedings in his courtroom. The comments and actions of the trial judge were not sufficiently prejudicial to the

appellants to warrant a reversal on the basis of plain error.

Further, Clark and Kruger assert that the awards of compensatory and punitive damages were excessive and the result of passion of prejudice.

In determining whether a verdict was influenced by passion or prejudice, a reviewing court should consider the amount of damages returned, whether the damages were induced by the admission of incompetent evidence, by misconduct on the part of the court or counsel, or by any other action occurring during the cause of the trial which can reasonably be said to have swayed the jury in their determination of damages that should have been awarded. *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, paragraph three of the syllabus; *Villella, supra*, at 39.

As stated previously there was substantial evidence presented to support the amount of compensatory damages and the award of punitive damages. Also, we cannot say that the award of $60,000 in punitive damages was so outrageous when compared to the pecuniary loss, or that the award warrants a remittitur or reversal on appeal. Further, the punitive damage award was not the result of misconduct or error. Therefore, the compensatory and punitive damages were not the result of passion and prejudice. The assignments of error are overruled.

*Judgment affirmed.*

CIRIGLIANO, J., and MAHONEY, J., concur.

Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV, Section 6(C), Constitution.